**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SKYLAR SMITH,<br><br>*Plaintiff,*<br><br>v.<br><br>TERRI VANDERGRIFF, et al.,<br><br>*Defendants.* | Case No. 4:26-cv-00287-MAL |

**MEMORANDUM AND ORDER**

Missouri prisoner Skylar Smith, a/k/a Joshua Daum, has sued six members of the Farmington Correctional Center (FCC) staff and primarily claims they violated his Eighth Amendment rights by failing to protect him from his cellmate. Doc. 1. For the reasons explained below, the Court dismisses the Complaint in its entirety.

## I. Background

Plaintiff is a convicted and sentenced prisoner who is incarcerated in the FCC. *Id*. at 2. He filed the Complaint pursuant to 42 U.S.C. § 1983 against six Missouri Department of Corrections ("MDOC") employees who work at the FCC. *Id*. at 2–4. He identifies the Defendants by name and title as follows: Terri Vandergriff, Warden; Travis Crews, Deputy Warden of Operations; Mr. Boesing, Deputy Warden of Offender Management; Amanda Church, Functional Unit Manager; Chantel Kimbrough, Corrections Caseworker II; and D. Amons, Correctional Officer I.[1] Plaintiff sues the Defendants in their individual and official capacities. Doc. 1 at 2–4.

[1] In the caption of the Complaint, Plaintiff struck out the names of Vandergriff, Crews, and Boesing. Doc. 1 at 1. But because Plaintiff named those Defendants in the section of the Complaint that identifies the defendants, *id.* at 2–4, the Court construes the Complaint as including them.

The following is a summary of Plaintiff's claims and supporting factual allegations, taken from the Complaint and from an exhibit to the Complaint.

**A. The Complaint**

On June 9, 2025, Plaintiff was assigned a new cellmate named Antwan Thomas. *Id.* at 5. Thomas had recently been disciplined and removed from the Missouri Sexual Offender Program. *Id.* On June 10, Thomas raped Plaintiff. *Id.* Plaintiff states the rape "went unreported so that Plaintiff could avoid the title of a snitch or rat." *Id.*

On June 16, Plaintiff was awakened by Thomas "sexually assaulting him by masturbating over him." *Id.* Later that morning, Plaintiff reported that incident to Officer Amons and asked to be moved. *Id.* Plaintiff does not state he told Officer Amons about the June 10 rape. *Id.* Officer Amons "immediately called Functional Unit Manager Amanda Church and told her the current situation the Plaintiff was in and that Plaintiff was requesting to be moved, but nothing more was done." *Id.*

Plaintiff claims that Officer Amons "was aware of the facts that Antwan Thomas was recently removed from the Missouri Sex Offender Program, that the Plaintiff was in direct way of being harmed, failed to initiate a PREA (Prison Rape Elimination Act) investigation and also failed to report a sexual assault a class A Misdemeanor." *Id.* Plaintiff claims that this subjected him to Cruel and Unusual Punishment, as any normal person would have reported the sexual assault, initiated a PREA investigation, and reported the situation to a higher authority. *Id.*

Next, Plaintiff references Officer Amons's report to Manager Church and alleges that Manager Church "failed to act in any way, grossly neglecting her duties as a Functional Unit Manager by not reporting the sexual assault a Class A misdemeanor, [not] initiating a PREA investigation, not notifying the Warden, and leaving Plaintiff in a dangerous situation." *Id.* Plaintiff claims that this subjected him to Cruel and Unusual Punishment, as any normal person would have reported the sexual assault, initiated a PREA investigation, and reported the situation to a higher authority. *Id.*

On June 18, Plaintiff spoke to Caseworker Kimbrough and told her "that his cellmate awoke him [while] masturbating over him[ ] and had tried to crawl into bed with him." *Id.* Caseworker Kimbrough responded, "That's what guys do." *Id.* Caseworker Kimbrough told Plaintiff he was ineligible to move based on his conduct violation history and suggested he return in approximately 70 days. *Id.* Plaintiff claims that Caseworker Kimbrough "had direct information that a sexual assault had occurred, that the Plaintiff was in direct harm's way, [that] Antwan Thomas[] behave[ed] [in this way], and did not act," thereby failing to protect Plaintiff. *Id.* at 5–6. Plaintiff can also be understood to claim that Caseworker Kimbrough failed to follow MDOC policy concerning reporting the assault and initiating a PREA investigation.

Antwan Thomas raped Plaintiff on June 19, 2025 for the second time. *Id.* at 6. Plaintiff reported the rape to a corrections officer who reported it to a superior officer, and Plaintiff was taken to the medical department and subjected to a sexual assault examination. *Id.* at 6; Doc. 1-1 at 5. The corrections officer initiated a PREA investigation. Doc. 1 at 6.

Plaintiff then filed a Complaint. Doc. 1. As relief, Plaintiff seeks $65.56 to compensate him for the loss of personal property taken as evidence. Doc. 1 at 9. He also seeks damages of "$249,999,934.44 for pain and suffering, mental and emotional trauma." *Id.* at 9.

**B. The Exhibit**

Plaintiff attached to the Complaint a document consisting of prison grievance procedure materials that directly relate to the above matters. Doc. 1-1. The Court will call this attachment the "Exhibit" and consider it in construing the sufficiency of the Complaint. *See* Fed. R. Civ. P. 10(c); *see also Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) (". . . materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint."). The following is a summary of the Exhibit.

On June 24, 2025, Plaintiff filed an Informal Resolution Request ("IRR"). Doc. 1-1 at 2. In the IRR, Plaintiff claimed that Caseworker Kimbrough and Manager

Church "refused to help me when I requested to be moved. They ignored policy and procedure keeping me in a dangerous situation in which I was raped." *Id*. Plaintiff reported the June 10 rape and stated he did not report it earlier because he did not want to go to administrative segregation or be labeled a "rat." *Id.* at 3. Plaintiff also reported that on June 16 Antwan Thomas "woke me while sitting on the desk masturbating watching me." *Id.*. Plaintiff stated he talked to Officer Amons that morning and

> asked her to help me get moved. I told her that offender Thomas tried getting in bed with me instead of the rape for the issues stated above. As well as the masturbation situation that morning. COI Amons informed me she personally couldn't but she would speak to F.U.M. Church and CCMII Kimbrough. Shortly afterw[a]rd COI Amons informed me I couldn't be moved, due to my violations within the last 90 days. But to go speak with the F.U.M. and caseworker to inquire about getting the 90 day violation free period overlooked. I attempted to do so but was refused due to 'no caseworker hours.'

*Id.* at 3–4.

Plaintiff then described his June 18 conversation with Caseworker Kimbrough, during which he "went into the instances of the masturbation situation and the situation of [the cellmate] trying to get in my bed with me." *Id.* at 4. Caseworker Kimbrough "responded that she would not move me and 'that is just what guys do.'" *Id.* at 4. Plaintiff states that Caseworker Kimbrough then "ushered me out of her office with the final comment 'come see me the end of July.' I offered a final time, 'please move me, it's really bad in there.' She simply said 'sorry.'" *Id.*

Plaintiff claimed Caseworker Kimbrough and Manager Church could have protected him from the June 19 rape and that they had sufficient information to initiate a PREA investigation but chose not to "due to their personal prejudices[ ] and homophobia[,] which are blatant." *Id.* at 5. Plaintiff also claimed that Caseworker Kimbrough and Manager Church failed to follow "national, state and department of corruption-Corrections policies and procedures of P.R.E.A. as well as safety and security of inmates and the institution." *Id.* at 6.

On July 25, 2025, Plaintiff's IRR was denied. Doc. 1-1 at 1. The IRR response noted that the staff members refuted Plaintiff's allegations and said that Plaintiff never told them he was afraid, never requested protective custody, and never referenced any PREA incidents. *Id.* The response further noted that Plaintiff's requested move was denied because he did not meet the criteria concerning conduct violations. *Id.*

Plaintiff continued to use the prison's grievance procedure through the grievance appeal stage. The December 1, 2025 grievance appeal response notes that the IRR and grievance responses adequately addressed Plaintiff's concerns and that the PREA investigation was ongoing. *Id.* at 11.

## II. Standard

This Court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Plaintiff is a "prisoner" as defined in section 1915A(c), and he seeks redress from employees of a governmental entity. Doc 1 at 4. This Court must therefore review Plaintiff's Complaint and dismiss it if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In

doing so, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented person's complaint, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## III. Discussion

### A. Official-capacity claims against all Defendants

Plaintiff asserts claims for damages against the Defendants in their official capacities. "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). According to the Complaint, all Defendants are employed by the MDOC, a state agency (Doc. 1 at 2–4). *See Walker v. Mo. Dep't of Corr.*, 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing the MDOC as state agency).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) "the violation of a right secured by the Constitution or laws of the United States," and that (2) "the alleged deprivation" of that right "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In this case, the Defendants in their official capacities are not "persons" under section 1983, *see Will v. Michigan*

*Dep't of State Police*, 491 U.S. 58, 71 (1989), so Plaintiff is missing an essential element of a section 1983 claim. Additionally, the Eleventh Amendment prohibits suits for damages against state officials acting in their official capacities. *Nix v. Norman*, 879 F.2d 429, 432–33 (8th Cir. 1984). As a result, Plaintiff's official-capacity claims fail.

**B. Individual-capacity claims against Warden Vandergriff, Deputy Warden Crews, and Deputy Warden Boesing**

Plaintiff identifies each of these Defendants as having a supervisory role at the FCC. A defendant with a supervisory role may be liable if his or her direct action or "failure to properly supervise and train the offending employee" caused the constitutional violation at issue. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (citation omitted). But the doctrine of respondeat superior does not apply to section 1983 cases. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1030–31 (8th Cir. 2012) ("[S]upervisors...cannot be held vicariously liable under § 1983 for the actions of a subordinate.") (quotation omitted). Section "1983 liability is personal," *White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) (quoting *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (en banc)), and to "prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Id.*; *see also Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) (noting that a plaintiff "must establish that [the defendant] was personally involved in, or directly responsible for" the plaintiff's harm).

Plaintiff makes no attempt to plead facts to show Warden Vandergriff, Deputy Warden Crews, or Deputy Warden Boesing were personally involved in unconstitutional conduct, failed to train or supervise employees, or created, applied, or interpreted a policy that gave rise to allegedly unconstitutional conditions. In fact, in setting forth his claims and supporting facts, Plaintiff does not mention Warden Vandergriff, Deputy Warden Crews, or Deputy Warden Boesing. Plaintiff cannot maintain a cause of action against these Defendants simply by listing their names and identifying them as possessing supervisory authority over the institution or over individuals who allegedly wronged him. *See Beaulieu*, 690 F.3d at 1030 ("The general

responsibility for supervising the operation of a facility is not sufficient to establish personal liability." (cleaned up)); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam) (court properly dismissed pro se complaint that was silent as to defendant except for his name appearing in caption)). The Court finds that the Complaint fails to state individual capacity claims against Warden Vandergriff, Deputy Warden Crews, and Deputy Warden Boesing. Having determined that Plaintiff cannot maintain an official or individual-capacity claim against these Defendants, the Court will dismiss them from this action under 28 U.S.C. § 1915A(b).

### C. Individual-capacity claims against Officer Amons, Manager Church, and Caseworker Kimbrough

The Court next considers Plaintiff's claims that Officer Amons, Manager Church, and Caseworker Kimbrough violated his Eighth Amendment rights when they failed to protect him from his cellmate. Prison inmates have an Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Prison officials may violate an inmate's Eighth Amendment rights if they are deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). A prison official exhibits deliberate indifference when he actually knows of, and deliberately disregards, such risk. *Id.* at 844.

But these prison officials also enjoy qualified immunity. Thus, when a plaintiff alleges that they violated the Eighth Amendment, the Court must address two distinct questions—"[w]hether a defendant has violated a constitutional or statutory right and, if so, whether that right was clearly established at the time of defendant's conduct." *Ivey v. Audrey County, Missouri*, 968 F.3d 845, 849 (8th Cir. 2020). A court may decide either question first. *Id.*

The Court chooses to resolve these claims based on the "clearly established" prong of the qualified immunity analysis. In this case, neither Manager Church nor Caseworker Kimbrough violated a clearly established right under the Eighth Amendment. Plaintiff accuses both Manager Church and Caseworker Kimbrough of

failing to act after Plaintiff reported to them that Antwan Thomas masturbated over him and attempted to crawl into bed with him. Doc. 1 at 5. Such behavior on Thomas' part would undoubtedly have been concerning, and perhaps Manager Church and Caseworker Kimbrough could have exercised better judgment by taking action to separate Plaintiff and Antwan Thomas. But it is not clearly established that Manager Church and Caseworker Kimbrough crossed the line into deliberately disregarding a substantial risk of rape.

For a constitutional violation to be "clearly established," legal authorities must establish "beyond debate that a constitutional violation has occurred." *Ivey*, 968 F.3d at 849. This Court has not found any Supreme Court or Eighth Circuit case with facts sufficiently similar to the facts in this case that conclude that a state actor violated the Eighth Amendment. Thus, the Court dismisses the Eighth Amendment claims against Manager Church and Caseworker Kimbrough.

As for Officer Amons, Plaintiff's allegations do not state a plausible Eighth Amendment or state negligence claim against Officer Amons. Doc. 1 at 4. Plaintiff alleges that when he told Officer Amons of the June 16 incident, Officer Amons "immediately called Functional Unit Manager Amanda Church and told her the current situation the Plaintiff was in and that he was requesting to be moved" and then communicated the decision to Plaintiff and offered him suggestions about renewing his move request. Doc. 1 at 5. Plaintiff does not allege that Officer Amons had the authority to grant his move request, and in the Exhibit, he notes that Officer Amons told him she personally could not help him but would report the matter.

Taken as true, Plaintiff's Complaint and Exhibit do not establish that Officer Amons deliberately disregarded a substantial risk of serious harm to Plaintiff or breached a duty. Instead, they establish that Officer Amons acted within the scope of her authority by immediately reporting the matter and then kept Plaintiff informed and continued trying to help him. The Court concludes that the Complaint fails to state a plausible Eighth Amendment deliberate indifference claim or a state negligence claim against Officer Amons.

It appears Plaintiff also claims that Officer Amons, Manager Church, and Caseworker Kimbrough are liable to him because they failed to initiate a PREA investigation, failed to report a crime, and failed to follow unspecified national and state laws, and prison policies and procedures. Doc. 1 at 5–6. Plaintiff's allegations do not state a cognizable claim for relief. The purpose of the PREA is, among other things, to prevent sexual assaults in the prison system. 34 U.S.C. § 30302. The PREA "does not authorize or create a private right of action." *Barber v. Baker*, 2020 WL 8372643, at *2 (E.D. Ark. 2020) (collecting cases); *see also Krieg v. Steele*, 599 F. App'x 231, 232–33 (5th Cir. 2015) (holding the PREA does not create a private right of action). And Plaintiff has no federal constitutional liberty interest in having the Defendants follow state law or prison regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability). Therefore, to the extent Plaintiff claims that Officer Amons, Manager Church, and/or Caseworker Kimbrough violated his rights under the PREA or failed to follow state law or prison regulations, such allegations fail to state cognizable claims for relief.

Finally, because there is no longer a federal claim against any defendant, this Court also dismisses any state negligence claims against Manager Church and Caseworker Kimbrough because the Court has dismissed all claims over which the Court would have "original jurisdiction." *See* 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

Pursuant to 28 U.S.C. § 1915A(b), the Court dismisses all claims against Defendants Officer Amons, Warden Vandergriff, Deputy Warden Crews, Deputy Warden Boesing, Manager Church, and Caseworker Kimbrough.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's claims against all Defendants are **DISMISSED.**

Dated this 18th day of September, 2026.

Maria A. Lanahan
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE